Christopher v. Austin, 11 N. Y. 216; Carter v. Bryon, 49 Hun, 299,
1 N. Y. Supp. 905; Edgerton v. Page, 20 N. Y. 281; Buffalo Stone
& Cement Co. v. Radsky, 14 N. Y. St. Rep. 82; Perniciaro v. Veniero
(Sup.) 90 N. Y. Supp. 369; Hamilton v. Graybill, 19 Misc. Rep. 521,
43 N. Y. Supp. 1079; Seigel v. Neary, 38 Misc. Rep. 297, 77 N. Y.
Supp. 854. It follows that the order appealed from should be reversed.

Final order reversed, and new trial granted, with costs to appellants
to abide the event. All concur.

---

PHŒNIX IRON CO. v. METROPOLE CONST. CO. et al.

(Supreme Court, Appellate Division, First Department. April 10, 1908.)

1. MECHANICS' LIENS—ENFORCEMENT—EVIDENCE.

In a proceeding to foreclose a mechanic's lien, evidence examined, and
*held* to support findings that the principal contractor by failing to pre-
pare the building foundation within the time specified in its contract
with plaintiff, a subcontractor, waived the condition in the contract with
respect to the time of commencing and completing plaintiff's work, and
that plaintiff, after being permitted to proceed with the work, completed
it without undue delay and within a reasonable time.

2. SAME—CLAIM OF OWNER FOR DAMAGES—NECESSITY FOR COUNTERCLAIM.

In a mechanic's lien proceeding by a subcontractor, the owner cannot,
as between himself and the subcontractor, reserve any of the balance ow-
ing to the general contractor after proof of completion of the work, with-
out having his damages established as between him and the general con-
tractor, which, in the absence of a settlement warranted by the evidence,
can only be done by counterclaiming and proving them; and hence, where
the owner, instead of counterclaiming for delay against the general con-
tractor and introducing the contract between them as a basis for proving
his damages, counterclaimed against the subcontractor, and did not in-
troduce his contract with the contractor, and prevented the subcontractor
from doing so, he had no standing to assert a claim for damages under
the contract for delay in finishing the work.

3. APPEAL—RECORD—ABSENCE OF EXCEPTIONS.

Where the record on an appeal by defendants fails to show the excep-
tions taken by plaintiff at the trial, it cannot be assumed that defendants'
evidence was received without objection.

Appeal from Special Term.

Action by the Phœnix Iron Company against the Metropole Con-
struction Company and others to foreclose a mechanic's lien. Judg-
ment for plaintiff, and defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN,
LAUGHLIN, HOUGHTON, and SCOTT, JJ.

David Gerber, for appellants the Metropole Construction Company
and Jacob Rothschild.

Norman S. Beecher (Herman S. Hertwig, on the brief) for re-
spondent.

LAUGHLIN, J. This is an action to foreclose a mechanic's lien
filed against premises at the southeasterly corner of Fifth avenue and
Sixteenth street, in the borough of Manhattan, New York. The ap-
pellant Rothschild was the owner of the premises, and he contracted
with the appellant the Metropole Construction Company for the erec-

tion of a 15-story office building thereon. The plaintiff contracted with the Metropole Construction Company to furnish and erect the structural steel and iron work. Plaintiff was the only lienor. The property was released from the lien on the application of the owner, who gave his bond, with the defendant the Fidelity & Casualty Company as surety. The plaintiff alleged complete performance, and demanded judgment for a balance of the contract price of the work, together with the agreed compensation to be made for extra work. The Fidelity & Casualty Company put in issue the material allegations of the complaint, but it offered no proof upon the trial, and, although it took an appeal, it did not appear on the argument of the appeal. The plaintiff alleged that the Metropole Construction Company duly performed its contract with the owner, and that at the time of filing the lien and prior to the commencement of the action there was due to the Metropole Construction Company from the owner "a sum in excess of the amount of the plaintiff's claim herein." The Metropole Construction Company and the owner served separate answers, but neither denied these allegations of the complaint. Both answers put in issue the allegations of the complaint concerning performance by the plaintiff, and with respect to the amount claimed to be due and owing to it. The Metropole Construction Company interposed a counterclaim, demanding judgment against the plaintiff for $12,000 damages, alleged to have been caused by the plaintiff's neglect to perform his contract work in time, whereby it claimed to have been obliged to do extra work and incur extra expense in getting the building ready for occupancy by the 1st day of February, 1906, in accordance with its contract with the owner. Upon the trial the Metropole Construction Company offered no evidence of any of the items of damage set up in its alleged counterclaim. The owner also interposed a counterclaim against the plaintiff, and demanded judgment against it for $80,000 damages, alleged to have been sustained through its failure to perform its contract work within the time therein limited therefor, whereby the owner claimed that he was delayed in renting the building; it being alleged that the plaintiff knew that the building was being erected for the purpose of letting the same. The subcontract with the plaintiff was introduced in evidence, but the general contract with the owner was not; and, although its production was requested upon the trial by counsel for the plaintiff, the defendants failed to produce it. The record contains no evidence concerning the terms of this contract either with respect to the time of the completion of the work or otherwise. The plaintiff could not proceed with its work until the foundation upon which the grillage beams were to rest was constructed. The contract between the plaintiff and the Metropole Construction Company, which was dated June 27, 1904, contemplated that this foundation would be ready by the 15th day of August, 1904, for the plaintiff agreed to have the grillage beams upon the ground ready to be set on that day. The contract further provided that the plaintiff should have the columns and beams up to and including the basement floor beams in place by the 15th day of September, 1904, and that from that time on the plaintiff should set one tier of columns and two floors of beams "every ten working days until completed." The general con-

tractor was delayed in constructing the foundation, and did not have the same ready for the grillage beams until the month of April, 1905, or about eight months after it was contemplated that it should be ready. The plaintiff was to manufacture the iron and steel at its plant in Phœnixville, Pa. The contract provided that on the 10th day of each month the plaintiff should receive 80 per cent. of the value of the work "furnished or put up at the building during the preceding month." It was evidently understood that the plaintiff should not deliver any of the material at the building until the foundation was constructed and ready for the grillage beams. The plaintiff, being thus deprived of a percentage of the value of the material which it had prepared for the building, and which it would have received, had it been permitted to proceed with the work in accordance with the contract, evidently opened negotiations with the construction company with a view to obtaining some indemnity for this loss. Accordingly, on the 10th day of November, 1904, an agreement was made between them, by which it was provided "that payments will be made on material ready to ship at Phœnixville, Pa., which cannot be shipped on account of the foundations not being sufficiently advanced, said payments to be 80 per cent. of the proportional value of the work under the contract," and the plaintiff agreed to allow the construction company 5 per cent. on such payments from the time made to the time when the material was delivered at the site of the building, the plaintiff, however, reserving the right to submit the question to arbitration under the arbitration clause of the subcontract between the plaintiff and the Metropole Construction Company, and the agreement further contained a provision as follows: "That no rights under said contract are altered hereby." This supplementary agreement evidently contemplated that the original contract should be carried out, except as to the time of performance; but otherwise it was intended to leave each party to his existing rights and remedies thereunder, and, as we view it, the modification of the contract has no material bearing on the questions presented for decision.

After the plaintiff was permitted to proceed in the month of April, 1905, it performed the work with due diligence, and within the time required by the contract, until 13 stories of the structure were completed. At this time the preponderance of the evidence shows there was a delay of about one month, and for this delay the owner claims the right to counterclaim against the plaintiff his damages for the loss of one month's rental of the building, and for rebates which he was obliged to allow to the tenants on account of his inability to give them possession on the 1st day of February, 1906; he having contracted with his tenants to give them possession at that time. Prior to the time the plaintiff commenced upon the building, negotiations had been had between the architect, who represented both the owner and the construction company, and the plaintiff, with a view to adding another story and making certain changes and alterations in the plans with respect to the structures to be erected on the roof, and the incidental changes rendered necessary with respect to the light shaft and support for the elevators. The compensation to be paid to the plaintiff for this extra work was agreed upon April 3, 1905, and the plans for the change were approved by the building department on the 24th day of the same month.

The material changes made by the new plans, in addition to adding the sixteenth story, were that the original plans contemplated a roof garden, which was abandoned by the new plans, and the penthouses which are structures on the roof intended for use as offices and storerooms, deckhouses, and tankhouses were about three times the area of that provided for in the original plans, which was 1,800 feet, and the light shaft was changed so that it ran up from the thirteenth, instead of the twelfth, floor. These changes necessitated a large quantity of additional material, and involved considerable extra work. The plaintiff also gave evidence tending to show and warranting the finding that, before it could proceed with the work of making detailed drawings of the material required for these new or altered roof structures, it was necessary to receive drawings from the architect, and that, after it received notice that the changes were to be made, it complained that the information had not been furnished earlier, so that it might have been enabled to have made the detailed drawings in advance; that it was not furnished with the drawings by the architect promptly after the change in the plans, and did not receive notice of the change in the light shaft until the 19th day of June, and did not receive drawings for the steel work on the roof until the 13th day of July, and, owing to inability to agree upon the classification of the work under this contract and to the indefiniteness of such drawings, the plaintiff was delayed in proceeding with that part of the work until after the 21st day of July, and that data for the sprinkler houses was not furnished until after the 13th day of July, owing to the fact that the board of fire underwriters had not acted upon the plans therefor, which required their approval; that the plans showing the position of the beams required for the elevators and the loads on the same were not received until July 27th; that, after the drawings were received from the architect, it required practically the entire month of August to complete the necessary detail drawings consisting of 23 drawings and 48 sketch sheets, which would have required one man 220 days to perform, and that it was unable to complete these until the first week in September, and was thereby delayed in ordering and obtaining the material required; that during the season of 1904 the steel market was normal, and orders could have been readily filled, but that in 1905 the market conditions were entirely changed, the demand for material being greater than the supply, and its orders for work were in excess of its ability to meet them.

The court found that the construction company, by failing to prepare the foundation within the time specified, waived the condition of the contract with respect to the time of commencing and completing the work, and that the plaintiff, after being permitted to proceed with the work, completed the same without undue delay and within a reasonable time. These findings are fairly warranted by the evidence, and would require an affirmance; but, as already observed, the construction company offered no proof of its counterclaim, and the owner, instead of counterclaiming against the general contractor and introducing the contract in evidence and proving his damages, erroneously interposed his counterclaim against the plaintiff, which was under no contract obligation to him, and then failed to show the terms of the con-

tract between him and the general contractor upon which any right he had in the premises were necessarily predicated. The owner could not as between him and plaintiff reserve any of the balance owing to the general contractor, after proof of completion of the work, without having his damages fixed and established as between him and the general contractor, which, in the absence of a settlement warranted by the evidence, could only be done by counterclaiming and proving them. See Dunn v. Uvalde Asphalt Co., 175 N. Y. 214, 67 N. E. 439.

It is urged by the learned counsel for the appellants that the question of the form of the pleading was waived, and that the evidence with respect to its counterclaim was received without objection, as if it had been interposed against the Metropole Construction Company. The exceptions taken by the plaintiff do not appear in the record, and therefore we cannot assume that this evidence was received without objection. Sufficient does appear to show that plaintiff moved to strike out the evidence of the owner's damages, which indicates that it took the objection. But, in any event, it is difficult to understand upon what theory the owner expected to establish a counterclaim for damages on account of failure to complete the building on or before the 1st day of January, 1906, without introducing or permitting plaintiff to offer in evidence the contract between him and the general contractor, which alone gave him a standing to assert any claim in that regard.

It follows, therefore, that the judgment should be affirmed.

Judgment affirmed, with costs. All concur.